JACOB W. FRANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 38133. Promulgated May 12, 1930.

*David J. Myers, Esq.,* and *Roy Allen Delong, Esq.,* for the petitioner.

*John D. Kiley, Esq.,* for the respondent.

### OPINION.

LANSDON: In light of the circumstances affecting the affairs of the petitioner and his wife at the time they entered into this contract of August 22, 1922, it is obvious that the thought uppermost in their minds at this time was the solution of their domestic difficulties. They had been man and wife more than thirty years and had accumulated some valuable property which was in the husband's name. They had been living separately more than five years, and, from the charges made in support of their respective suits for divorce, it would seem that any reconciliation between them was quite improbable. The petitioner had filed a suit for divorce with which, in light of the fact that the wife later prevailed in showing herself to be the aggrieved party, we must assume he could not go forward. He was, however, being required under a rule of the court rendered in his case to pay to his wife alimony at the rate of $100 per month pending the outcome of the suit. Had the wife pressed the petitioner's suit to a trial, at this time and under countercharges, such as she later sustained in her own action, she would have been successful in obtaining a divorce from "bed and board" as provided for in section 9154, Pennsylvania Statutes (1920), she might have been awarded further and additional alimony up to an amount not exceeding one-third of petitioner's entire annual income. It would seem, therefore, in these circumstances, that the advantage in dictating a settlement of their difficulties, if any, was entirely in the wife. She could bring the petitioner's case to trial if she saw fit, or continue their present status and draw the alimony then in effect. If the petitioner decided to dismiss his suit she could file her own, as she evidently had prepared to do, since her libel filed in October following the contract of August 22 had been sworn to by her in May previous. It was under these conditions that the petitioner and his wife met in August and executed the contract set forth in our findings.

The petitioner contends that, since this contract specifically states that the wife, who is the second party, is unwilling to execute the deed and thereby "divest herself of her inchoate rights" to the premise to be conveyed, except upon the terms and conditions thereinafter stated, such statements conclusively show that the consent of the wife to sign the deed was obtained only upon condition that she later be paid the sum of $40,000 out of the proceeds of the sale, and that such money when paid to her must be treated as a payment direct from the purchaser and not from the husband. The difficulty with this construction of the transaction lies in the fact that it ignores the two separate controlling conditions of the contract. The first of these has to do with the general agreement for a settlement and is the inducement for the signing of the deed. This condition in no way

concerns itself with the ultimate disposition of the money, but provides for the simultaneous execution of the deeds with the contract so that the property can be sold and the money can be held in the bank pending the fulfillment of the second condition. It also impounds a second deed to the Myrtlewood Street property, which is to be held subject to the same condition; and provides for the immediate delivery to the wife of the personal property listed in schedule "A" attached to the contract. This condition is fully met when the deeds and contract are signed and placed in the bank, and the property described in schedule "A" delivered to the wife.

The second condition in this contract is entirely separate and distinct from the first and has to do with a division of property between the parties in case a divorce is obtained within a year. If no divorce is obtained between the parties within the year, then both the deed to the Myrtlewood Street property and the money are to be returned to the petitioner.

The record indicates that in carrying out these transactions by the parties neither of the conditions in the contract referred to were adhered to in the strictest sense. There is no showing of the execution or putting in escrow of any deeds as provided for in the contract. The actual conveyance of the property, when sold, was by a deed executed May 5, 1923, and $2,000 of the money received by the wife was paid to her in advance by the petitioner and not through the bank or her attorney as stipulated. These departures from the strict terms of the contract tend to confirm our conclusions that the prime object of the parties, in its execution, was to arrive at some definite understanding through which they might be divorced from each other and at the same time have a fair division of their property between them. Having concluded the terms, they were more informal in carrying them into effect. The payment in question was a part of the proceeds of property sold by the petitioner and the income from such sale was a part of his gross income for the year received. Nor can the payment to the wife be treated as deductible. *Gould* v. *Gould*, 245 U. S. 151. The action of the respondent is sustained.

*Decision will be entered for the respondent.*